Nicholson, C. J.,
delivered the opinion of the Court.
The Tennessee National Bank, for the use of the State of Tennessee, sued Jos. Tagg in the Circuit Court of Shelby county, and declared on a note for five thousand dollars ($5,000), dated April 2, 1866, and, due at six months, payable to his own order, and by him endorsed to the Bank. Defendant put in two pleas — nil debit and payment — but there was no issue on the former, and no replication or issue on the latter. The trial resulted in a verdict and judgment for the plaintiff, and after motions in arrest and for a new trial were overruled, the defendant appealed in error to this Court.
*481 The first error which we will notice is assigned upon the charge of the court.
The defense to the note is first stated by the judge as follows:
“The defense relied on is, that this note, or the one of which it is a renewal, was given to one Rut-ter, with the understanding that the note was not to-be used by Rutter, and that when it was used by Rutter in his capacity of President of the Tennessee-National Bank, and passed to the Bank in violation of his agreement, Rutter being the agent of the Bank in the transaction of passing it to the Bank, affected the Bank with notice of the agreement under which the note was given, and that the Bank could not recover on it, because this use of the note was in violation of the agreement and in fraud of defendant’s rights.”
On the question of notice the judge charged “that notice to an agent of the Bank in regard to matters connected with his agency, is notice to the Bank, though the agent was not strictly pursuing the terms of his agency. For instance, if in this case the President, who was the discounting- officer of the Bank, found out in his capacity as President that paper to be discounted was void or defective, and he failed to communicate that fact when it was discounted, this would be notice to the Bank, though the Bank did not in fact know of the true character of the paper. But if the President obtained the knowledge of the defect of the paper in his individual capacity, or if he, not acting as President of the Bank, but for *482 himself, was a party to the fraudulent transaction out of which the paper which was afterward discounted arose, and that transaction was not for an ordinary aim or object, neither his knowledge nor the fraud would bind the Bank, and the party who innocently put it in the power of the President to perpetrate the fraud on the Bank would be bound on the paper.”
The same idea is again repeated, with more emphasis, as follows:
“ If the President came to the knowledge of this transaction while acting for himself, and not for the Bank, and the defendant understood him to be acting for himself, and afterward he used his official position in imposing upon the Bank, he could not thus bind the Bank, and the defendant, though innocent himself of fraud, would be bound on the paper, for he thus puts it in the power of the President to do a wrong to an innocent party, and he must suffer.”
The correctness of the first proposition laid down 'by the judge is indisputable. It is settled law that fraudulent representations, or a fraudulent concealment of material facts by an agent, when engaged in the transaction of the business of the principal, will charge the principal, constructively through the agent. Story on Agency, 131.
The instruction, therefore, to the jury, that if Butter, the President of the Bank, came to the knowledge of the defect in the note in his capacity as such President, and failed to communicate his knowledge to the Bank when the note was received or discounted, *483 the ' Bank was thereby affected with constructive notice of the defect in the note.
But is the next proposition laid down by the judge maintainable as law? He says if Rutter, though President, acquired his knowledge of the defect in the note while acting in his individual capacity, and not as President, and afterward when the note was discounted, failed to communicate his knowledge, and thereby perpetrated a fraud on the Bank, his concealment of his knowledge would not operate as constructive notice to the Bank, but that the Bank could recover on the note against the defendant, although-he was innocent of the fraud. It would be exceedingly difficult to find a substantial ground on which to rest the distinction taken in the two cases stated. In the one the agent obtains his knowledge while acting for his principal. If- he fails afterward to communicate his knowledge when acting further for his principal, his principal is bound as fully as if the communication had actually been made. This is settled on principles of public policy. Why, then, if the agent, in acting for himself, becomes possessed - of knowledge as to a transaction which affects his principal, is he not bound to communicate that knowledge when it becomes his duty afterward to act in his agency in reference to the very transaction about which he obtained knowledge that would affect, his principal? In each case he is under all the obligations of an agent, and in each case he has knowledge which involves the interest of his principal. Surely there is no reason why the obligation to dis *484 close his knowledge is not as strong, when he derives-that knowledge in a transaction for his own benefit, as in a transaction for the benefit of his principal.
We are sustained in this view in the case of the Union Bank v. Campbell, 4 Hum., 396. In that case-suit was brought against a member of a firm on a note executed after the dissolution, by another member. The fact of dissolution was known to two of the Directors of the Bank who were present when the-note was discounted. They had derived this knowledge from having seen the. publication of the dissolution in a newspaper. When the note was discounted neither of the two directors communicated his knowledge of the dissolution, and the Bank discounted the note in ignorance of the fact. After holding that a Director of a Bank is an agent, Judge Green said: “All that is necessary is, that the Director, acting in the Board when the note is offered for discount, should have knowledge of the dissolution. If he have such knowledge he is bound to communicate it to the Board.” We do not intend to controvert the general doctrine that “notice must come to an agent while he is concerned for the principal, and in the course of- the same transaction;” for notice to a party while he is not acting as agent, is certainly no notice to a principal for whom he may afterward act. But the existence of knowledge in an agent, when acting for his principal, is notice to the principal, however that knowledge may have been acquired. The material fact, therefore, which binds the principal, is the knowledge which the agent possesses when he comes to act, *485 •and the principal is bound in such case whether the knowledge is communicated or not, and without regard to the manner in which the agent acquires his knowledge.
In the case of the Bank of United States v. Davis, 2 How., 461, relied on by Judge Green in the case of the Union Bank v. Campbell, Judge Nelson said: “The general rule is undisputed, that notice to the agent is notice to the principal, if the agent comes to the •knowledge of the fact while he is acting for the principal in the course of the very transaction which becomes the subject of the suit;” and in answer to the argument that the agent was acting for himself and not for his principal in the perpetration of the fraud, he said: “It is not true in point of fact, that Williams (the Director), was not acting in behalf of the Bank at the time of the transaction in question. He was present as one of the Board of Directors, engaged in the business of consulting and advising with his •associates in ^respect to the character of the paper presented for discount; and advised, and doubtless recom'mended, in his character and capacity as such Director, the bills in question to the favorable notice of the •Board. . It is no answer, therefore, to say that Williams is not to be regarded as acting in his capacity of Director in behalf of the Bank, but for himself, while engaged in, perpetrating the fraud.”
In that case the drawer of a note desiring to raise ■money, executed his note and handed it to Williams, -one of the Directors of the Bank, to be presented for •discount. He look the note, endorsed it himself, re *486 commended its discount, concealing the fact that the proceeds were intended for the maker, and upon its. being discounted, he drew the money and used it himself. The Bank sued the maker, but failed, because-the Bank was affected with constructive notice of the fraud.
It is observed that in that case the Bank was in. fact innocent of any fraud, as was also the maker of the note. The question was, as between these two- innocent parties, which should bear the loss? On this question, Judge Nelson states the reason of the rule-which throws the loss on the Bank. He says: “The-Bank appointed the Director and thus held him out to their customers and the public as entitled to confidence. They placed him in a position where he was. enabled to commit the fraud. Hence as a matter of public policy the loss ought to fall on the Bank. Jn the case before us the Circuit Judge reversed the-rule, and held that the maker ought to bear the loss because, though innocently, he put it in the power of the President of the Bank to perpetrate a fraud.” See also Fulton Bank v. N. Y. Shannon Canal Co., 4 Paige Ch. R., 137.
So far we have been considering the case upon the assumption that Tagg was innocent of any -fraudulent complicity with Rutter in perpetrating a fraud on the Bank. We are next to consider the law applicable-to the case in the event the jury should be satisfied that Tagg had knowledge of Rutter’s fraudulent purpose in procuring his note and his consequent fraudulent use of the note.
*487 The first question, .in this view of the case, is, whether the Bank and Tagg stand in pari delicio, and whether the rule applies, that in such the plaintiff must be repelled because the position of the defendant 'is the better? ’While it is true that the Bank is-affected with constructive notice of the fraud, yet in point of fact there is no actual fraud, but such constructive fraud as between the Bank and an innocent party prevents the Bank from recovering. But when the Bank is only guilty of constructive fraud, and the-maker of the note, Tagg, is guilty of actual fraud, although both . are in delicto, yet they are not in pari delicto, and the reason of the rule which rests on public policy can not apply. It was so held in the case of the Agricultural Bank v. Burr, 24 Maine, 270. The reason given by Chief Justice Whitman was, that the Bank was merely the nominal party, the creditors-of the Bank being the real parties in interest, and therefore as the real parties in interest were innocent,, they could not be made to suffer for the constructive-fraud of their trustee, the Bank corporation. We are-therefore of opinion that when the Bank is affected only with constructive notice of fraud, and the defendant,, being the maker of the note sued on, is shown to-have combined with the President of the Bank in perpetrating the fraud, the defendant is not in a condition to claim the benefit of the rule applied to parties in pari delicto. Nor is it different if the defendant, instead of having participated actively or affirmatively in the fraud, has so acted as to justify the jury in believing that the circumstances were such as *488 to have satisfied the defendant, as a man of ordinary prudence, that Rutter had a fraudulent purpose in procuring his note.
But the defendant resists a recovery on the note, upon the ground that it was made without consideration. This was a question of fact for the jury. It was testified by Tagg that he received nothing, either from Rutter or the Bank, in consideration of the note; that he executed and delivered it to Rutter at his solicitation, upon the agreement of Rutter that it should never be used, and that Rutter passed it to the Bank without his knowledge or consent. It is manifest that upon this evidence, if it was received as true, there could be no verdict against the defendant. If it be true, as is conjectured, that Rutter’s object was to place the note in Bank to make a colorable and fraudulent appearance of larger assets than the Bank really had, even if Tagg knew of this object and concurred ' in it, as there was no consideration passing between Rutter and Tagg, according to the evidence of Tagg, the Bank could have no recovery against Tagg on the note. Agricultural Bank v. Robinson, 24 Maine, 276; Lime Rock Bank v. Hewitt, 50 Maine, 269.
But it is insisted for the Bank that the evidence of Tagg is too unreasonable and improbable to command credence — and that in fact the note was executed in consideration of fifty shares of the Stock of the Bank, which Tagg had received and for which a certificate had issued to him, which stock he had voted in the election of Directors, and which he held until the Bank failed, and then fraudulently surrendered to *489 Eutter in satisfaction of his note. If the evidence satisfied the jury that this was the truth of the case, it is clear that the defense of a failure of consideration was successfully resisted.
These questions of fact were passed upon by the jury and were found in favor of the Bank, but as we are unable to see that their verdict was not influenced by the error in the charge which we have pointed out, we are constrained to reverse the judgment and give a new trial.